## No. 927.

SUCCESSION OF CARMELITE PLANCHET. OPPOSITION OF V. VEAZEY.

Oppositions to the account of an administrator, and the homologation of the account, are parts of one suit, and should be passed on in *one* decree, and not in separate decrees.

No defect in a premature appeal taken from an interlocutory decree in a case, can prejudice the appeal subsequently taken from the final judgment in the case.

It is improper to appeal from a judgment by motion in open court, except during the term of the court at which the judgment was rendered; but if the appeal is thus taken at a *subsequent* term, and the appellee appear and file an answer, the defect will be cured, and the appeal maintained.

Property purchased during marriage, whether in the name of the husband, or the wife, becomes community property.

The surviving husband is absolute owner of one half the community property, and life-time usufructuary of the other half, which latter half the heirs of the deceased wife can not set up any claim to during his life.

A PPEAL from the Parish Court of the parish of Vermilion. *Kibbe, J.*

*F. R. King,* for opponent and appellant.

*R. P. O'Bryan* and *Mouton & Debaillon,* for administrator.

The opinion of the court was delivered by

MARR, J. Carmelite Blanchet, wife of Valcourt Veazey, to whom she was married without nuptial contract, died, intestate, at the matrimonial domicile, in Vermilion parish, in February, 1864, without ascendants or descendants, her legal heirs being her brothers and sisters and the descendants of deceased brothers and sisters, her husband surviving. One of the heirs administered; and he caused all the movables and immovables which were in the possession of the spouses at the time of the death of the wife, to be inventoried, and all the movables to be sold as belonging to her succession.

In 1874 Valcourt Veazey obtained an order from the parish court requiring the administrator to account. On the sixteenth of October, 1874, he filed a "tableau of debts and charges and of provisional settlement in the succession of Carmelite Blanchet," and he prayed that the heirs be cited, and that the tableau be homologated after due publication.

Veazey opposed this tableau, alleging that the charges were excessive, and that he was entitled, after the payment of the debts, to one half the community as owner, and to the usufruct for life of the other half.

The opposition was maintained in part, and the court decreed that all the movables inventoried and sold in the succession, except certain objects which were proven to have belonged to the wife at the time of the marriage, and a tract of one hundred and sixty acres of land purchased during the marriage, belonged to the community; that certain amendments and corrections of the tableau should be made, and that all the expenses and charges of the administration should be borne by the com-

munity. The court further decreed that, "as thus amended, the tableau be *then* homologated."

From this judgment, which was rendered on the third of May, 1875, the opponent and the administrator appealed, but the appeal was not prosecuted beyond the motion made in open court.

At the next term, in June, 1875, the court rendered a final judgment homologating the tableau as corrected and amended by the judgment of the third of May. Thereupon the opponent, by motion in open court, appealed from this judgment, and gave the requisite bond; and he also, by motion, appealed from the judgment of the third of May, and gave bond, both appeals being made returnable to the ensuing June term of this court.

The administrator, appellee, moves to dismiss the appeal, on the ground that the judgment was rendered and signed at the May term, and the appeal could not be taken by motion at the June term. Referring to his motion, which is applicable only to the judgment of the third of May, and in the event that it be maintained, he pleads that judgment as *res adjudicata*, and this is followed by an answer to the appeal praying an amendment of the judgment in several important particulars.

The proceedings in this case are irregular and improper, and we think it not amiss to call the attention of the parish judges to what we consider the correct practice in such cases.

When the representative of a succession files an account he is plaintiff. The burden is on him to prove and establish the correctness of the account, and it can not be homologated without such proof. If no opposition is made, the proof is introduced, and the whole proceeding is *ex parte*, just as in ordinary cases where judgment by default has been taken, and is to be confirmed. Where opposition is made, whether by one person or by several persons separately, or by a number of persons who unite, all the oppositions constitute so many answers or pleas to the same suit and demand, and they must all be tried as one case, and one judgment must be rendered. That judgment will pass upon and dispose of all the oppositions and the account; it will correct and amend the account so far as the oppositions are maintained, and, as thus corrected and amended, will approve and homologate it. Or, if the oppositions are not maintained in whole or in part, the account will be homologated so far as the several items are proven and established to the satisfaction of the court.

It was improper for the court in this case—it will be irregular and improper in any similar case—to take up and try the opposition as a separate case, pronounce a judgment disposing of the opposition, and, at a subsequent term, or at the same term, to render another judgment homologating the account.

The motion to dismiss can not prevail. The judge of the parish court treated the judgment of third of May as interlocutory, and the final judgment homologating the account was based upon that judgment, which, in fact, disposed of the whole case. The appeal from the judgment of homologation brought up the entire case, and the other appeal was not necessary, nor can it in any manner prejudice the rights of opponent. The first appeal in May was premature, and it was evidently taken merely as a precautionary measure. The appeal from the judgment of homologation was in all respects regular, and the only irregularity in the appeal at the June term from the judgment of the third of May is that it was taken by motion instead of by petition and citation. The whole object of citation is to bring the appellee into court; and if he appears for any other purpose than merely to move to dismiss the appeal, that object is fully accomplished. The answer to the appeal cures the want of citation, and the cause must be heard and determined on the merits.

And here we take occasion to say that the motion to dismiss ought, regularly, to be determined before an answer to the appeal is filed. The limited duration of the terms of this court in the country districts makes it necessary to hear the whole case on the motion and the merits at the same time. In order, therefore, to guard against the waiver which logically and legally results from the filing of an answer, the proper practice is to reserve, at the beginning of the answer, the benefit of the motion, and to set out in the answer that it is to be used only in the event of the overruling of the motion.

The administrator reserved a bill of exceptions to the ruling of the parish judge admitting in evidence a notarial act of the twenty-seventh of December, 1853, by which Telesphor Landry sold and conveyed to Valcourt Veazey one hundred and sixty acres of land which, by act of eleventh July, 1853, he had sold and conveyed to Carmelite Blanchet. She joined in this act of the twenty-seventh of December, in which it is declared that the sale and conveyance to her of the eleventh of July were null and void. The act was clearly admissible. It was the best evidence that the conveyance had been made to the husband; but it in no manner created any new right in him, nor did it divest any right of the wife. The sale in July, during the marriage, did not make the land the separate property of the wife, and the sale of the twenty-seventh of December did not make it the separate property of the husband. Whether the title stands on the conveyance to the wife of the eleventh of July, which she afterward declared to be null and void, or on the conveyance to the husband of the twenty-seventh of December, the property belonged to the community, and the community was the debtor of the wife for so much of her separate means as was used in paying the price.

Succession of Carmelite Planchet.

The inventory shows slaves valued at $4100, lands valued at $4600, a note for $300, silver and gold coin $418 30, Confederate money, available because used in paying Confederate tax of equal amount, $112, and movable effects which were sold for $7056 67.   The slaves, of course, were of no value, and the lands have not been sold.   The proof is clear that three hundred acres of the land and the slaves belonged to the wife at the time of the marriage, and that one hundred and sixty acres of the land belonged to the community.   Part of the movables sold belonged to the community, and part to the wife alone.

It was proven that the means of the wife to the extent of five hundred dollars were used in paying for the one hundred and sixty acres of land belonging to the community; and that the wife sold a tract of land in December, 1853, to Onézime Trahan for twelve hundred dollars, cash, which she gave to her husband to keep for her. It does not appear what became of this money ; but there is nothing tending to show that the husband used it, either for his own purposes or for the benefit of the community.   Both husband and wife were industrious and economical, and he acquired no property, nor does any thing indicate any expenses of living beyond the income from her loom, the daily sales of vegetables from the garden, the crops of cotton and corn made by the labor of the slaves and of the husband, and occasional sales of cattle.   We agree with the parish judge that the proof does not suffice to charge the community with this sum.

In June, 1865, the administrator filed what he called a tableau, which was, in fact, merely a statement of debts and charges, without any reference to the assets.   The items foot up $1440 22 ; or, filling a blank with amount of Guegnon's bill for printing, $270 40, the amount would be $1710 62.   None of these items are debts of the community, except the physician's bill, eighty dollars, druggist's account, twenty-eight dollars, and Confederate tax, $112.

The account or tableau filed in October, 1874, begins with debts as per former tableau, $1710 63 ; and subsequent charges, including $300 retained by the administrator for future charges, foot up $3931 72, though when the deductions are made, preparatory to a distribution, this amount is set down at $3971 72, and the balance for distribution is only $2438 36.

Of all the items charged in this account, we find none which bear upon the property of the community, except such portion of the taxes paid as were levied on the one hundred and sixty acres of land belonging to the community.   The property taxed was four hundred and sixty acres of land, and the entire amount charged is $313 10, which gives for the one hundred and sixty acres, $108 90.

The judge of the parish court found that of the movables sold by the administrator, objects which brought $2498 28 had been identified and

proven to have belonged to Carmelite Blanchet at the time of the marriage ; and he decided that this amount should be deducted from the $7056 67, and that the remainder belonged to the community. We agree with him in this, and shall affirm the judgment to that effect.

He also decided that the community was to be charged with five hundred dollars, paid on account of the price of the one hundred and sixty acres of land, and we find this correct, and shall affirm the judgment to that effect.

He also decided that the one hundred and sixty acres of land, the money on hand, and the note for three hundred dollars belonged to the community ; and that the community was not chargeable with the twelve hundred dollars, price of land sold to Trahan by the wife in December, 1853 ; and we find the judgment correct, and shall affirm it to this extent, also.

The parish judge also rejected certain items in the account, and decided that the whole amount allowed was a proper charge against the community. In this we think he erred; and, as we are compelled to remand the case, we shall reverse his judgment, except so far as indicated above.

We have earnestly desired to render a final decision in this case, and to close this prolonged litigation, but it is not possible for us to do justice to the parties with the proofs in the record.

By law, at the death of the wife, the husband became absolute owner of one half the effects and property of the community, and usufructuary for life of the remainder. The community owed no debts, except for the medical and drug bills $108, Confederate tax $112, and $500 due the succession of the wife. There was a sufficiency of Confederate money in the house to pay this tax, and it was used for that purpose; and the $418 30 in gold and silver coin would have paid the medical and drug bills, and have left ample means to defray the funeral expenses.

So far as the community property was concerned, the husband was in possession of right, as head of the community, and the heirs were not entitled to any part of it, except the one half of the residuum after paying the small amount of community debts; and this half they could not have claimed during the life of the husband, the legal usufructuary.

We find the charges in the accounts filed by the administrator most extraordinary. The succession owed nothing but for funeral expenses, and the property was sold on a credit of one, two, and three years. Dissecting the accounts, we find charged in them for attorney's fees $848 75, for commissions for collecting $154 58, printing bills $270 40, clerk's fees $219 90, recorder's $132 50, administrator's commissions $272 94, keepers of the property and guardian of the seals $374, making $2273 07 of charges, without the slightest necessity or justification. We can not

allow such wrongs to pass, with the apparent approbation of silence; and we are somewhat surprised to find that the opponent was allowed $320 as keeper of the seals for one hundred and sixty days.

It was the right, and it was the duty of the husband to have paid the debts of the community, to have had an inventory taken, and to have retained the entire community property in his possession as owner of one half, as usufructuary of the other half, securing to the heirs of his wife their half at the expiration of the usufruct, in the manner pointed out in the Code.

This is no longer possible, except with respect to the one hundred and sixty acres of land, purchased of Telesphor Landry, on the twenty-seventh of December, 1853, which the opponent is entitled to take and hold and use, one half as owner, the other half as usufructuary.

With respect to the movables, all that can be done is to ascertain what should be reasonably deducted for the expense of selling them, and to charge against the community the community's share of these expenses, and to have the remainder paid over to the opponent, one half as owner, the other half as usufructuary; and for this latter half he will give security as required by the Code; or, failing to do this, the money must be put out, either with the consent of the heirs or by the authority of the judge of the parish court, at interest, and secured; the interest to be paid annually to the usufructuary, and the capital to be paid to the heirs or their legal representatives at the expiration of the usufruct.

The administrator must be required to make a new account, in which he will deduct from the sales, say the $7056.67, the $2498 28, which belongs to the succession of the wife. To the balance he will add the $300 note of Frank, and the $418 30 in coin. This sum will represent the gross amount of movables belonging to the community. From this sum he will be allowed to deduct such part of the expense of selling the movables as should be borne by the community; that is, where the whole expense of selling these effects is ascertained, it will be apportioned between the community owning $4558 39, and the succession of the wife owning $2498 28 of these effects. There will also be deducted the $500 paid out of the wife's means for the one hundred and sixty acres of land, $108 for medical and drug bills, and $108 90 for taxes chargeable to the community property. The $112 Confederate money, and $112 Confederate tax, will be omitted, because the one extinguishes the other. When the amount is thus ascertained, the one half will be paid to Valcourt Veazey as owner, and the other half be delivered to him as usufructuary in the manner already stated.

The succession of Carmelite Blanchet will consist of the three hundred acres of land owned by her at the date of the marriage, the $2498 28, her share of the movables sold, and the $500 due to her by

the community, as just stated. Her half of the community will also be part of her succession, but it can not be administered or taken possession of by the heirs until the termination of the usufruct of Valcourt Veazey.

The administrator will account to the heirs for the effects of the succession, and the costs of administration, except the part of the expenses of selling, to be borne by the community, as above stated, will be chargeable to the succession alone.

It is therefore ordered, adjudged, and decreed that so much of the judgment appealed from as fixes the interest of the succession in the movables sold at $2498 28,.and recognizes the right of the community to the remainder, so much of said judgment as awards to the community the other personal and movable property, and the one hundred and sixty acres of land purchased during the marriage, and so much of said judgment as charges the community with the $500 paid for the one hundred and sixty acres of land, and so much of said judgment as declares the community not liable for the $1200, price of land sold by Carmelite Blanchet to Onézime Trahan, be and the same is hereby affirmed; that the said judgment be in all other respects avoided and reversed; that the cause be remanded for further proceedings as herein directed, and according to law; and that the costs of the court below and of this appeal be borne by the succession of Carmelite Blanchet.