S. MEREDITH DICKINSON, executor of the last will and testament of Mary W. Clymer, deceased,

*v.*

G. BLEASDALE OVERTON et al.

[Filed December 16th, 1896.]

1. Where two legacies are given *simpliciter* to the same legatee by different instruments, the presumption is that the later is cumulative, whether its amount be equal or unequal to the former.—*Held*, in this case, that six legacies given by the fifth codicil to the will are not substitutional for six legacies given to the same legatees by previous codicils, both because of the rule of interpretation stated and because of a manifest intention in keeping therewith.

2. Two legacies of money equal in amount, bequeathed to the same legatee in one and the same instrument, are considered as mere repetition of each other, and the legatee will take only one.—*Held*, in this case, the rule stated is applied where five legacies of $1,000 each to the same persons are given, without explanation of the duplication, by both the fourteenth and seventeenth clauses of the fifth codicil to the will, it appearing, from the fashion in which the codicil was framed, that confusion and forgetfulness may have existed.

On bill to construe will.

*Mr. Hugh H. Hamill,* for the complainant.

*Mr. Garret D. W. Vroom,* for James R. Macfarlane and Eugenia H. Macfarlane.

*Mr. S. D. Oliphant, Jr.,* and *Mr. R. A. Mercur* (of Pennsylvania), for Mary W. Mercur and others, children of Louisa O. Ward.

*Mr. William M. Lanning* and *Mr. Charles E. Gummere,* for Rose N. De Bryas and others.

THE CHANCELLOR.

Mary W. Clymer died on the 22d of July, 1893, at Trenton, leaving a will with five codicils thereto. The will and codicils

were admitted to probate by the surrogate of Mercer county on the 9th of August in the same year. The will bears date on the 18th of October, 1872, and the codicils are respectively dated October 18th, 1872; October 23d, 1872; May 24th, 1882; June 29th, 1882, and May 10th, 1893. By the last codicil the complainant is substituted and appointed the executor of the will.

The will bequeaths a number of legacies, specific and general, and some by way of annuity. The several codicils, covering the succeeding twenty-one years, deal with these legacies, revoking or modifying them and creating others of similar character. The disposition of the residuary estate is effected by the tenth paragraph of the will, by which the residue is given to the executors in trust, to divide the same into three equal parts and to assign and convey one of the parts to George Clymer, a brother of the testatrix, one to her brother William Bingham Clymer, and one to such of the children of her late sister Eliza Overton, as should survive her, and to the descendants then living of any child of the sister who then might be dead, each set of descendants taking only such share as their parent would have taken if living. In case she should survive her brother George, the one-third share intended for him was to be divided equally amongst his children then living and the descendants of children then dead, such descendants taking together, however, such share only as their parent would have taken if living. And in case she should survive her brother William, the one-third share intended for him was to be divided equally amongst his children then living and the descendants of children then dead, as in case of the brother George, in like contingency.

The two brothers of the testatrix predeceased her, each leaving two children who survived the testatrix. Five children of Eliza Overton survive the testatrix, and two have predeceased her. One of those two who predeceased her died without issue, and the other, Mary O. Macfarlane, died leaving six children, all of whom survive.

By the last codicil to her will, the testatrix gave $5,000 each to seven of these nine surviving nephews and nieces, and $10,000

each to two of them. She had previously, by the codicil of May 24th, 1882, given $1,000 to her niece, Rose De Bryas, daughter of her brother William, who, as one of the seven nephews and nieces, is given, as stated, $5,000 by the last codicil. The testatrix did not give anything to the children of her deceased niece, Mary Macfarlane, as an equivalent for a similar legacy of $5,000 to their deceased mother. By the same last codicil, by several clauses thereof, the testatrix gave $1,000 each to twenty-eight children of her nephews and nieces, including the children of Mary Macfarlane, and $500 each to twenty-three of her great-grandnephews and nieces. By the eleventh clause of the last codicil she gave $10,000 each, as above indicated, to her nephew, G. Bleasdale Overton, and her niece, Louisa Ward. By the fourteenth clause of the same instrument she gave $1,000 each to the children of that nephew and niece, and again, by the seventeenth paragraph of the same codicil, gave $1,000 each to the five children of the same niece, naming them. By previous codicils she had given two of her great-nephews, James R. Macfarlane and Edward Overton Ward, $500 each, and two of her great-nieces, Eliza Ward Lynch and Eugenia H. Macfarlane, $1,000 each. It is perceived in this statement of legacies bequeathed that $9,000 was given in legacies outside the apparent scheme of the last codicil, that by that codicil seven of the living nephews and nieces should each have $5,000 and two double that sum, and that each living grandnephew and niece should have $1,000, and that certain great-grandnephews and nieces should each have $500, and that if the legacies under that scheme should be held to be substitutes for the prior legacies the $9,000 would go to the residuary estate and be divided so that each of the children of the deceased brothers, George and William, will take $1,500 of it, and each of the five living children of the deceased sister, Eliza Overton, will take $500 of it, and the six children of Mary Macfarlane, the deceased daughter of Eliza Overton, will each take $83.33⅓. This situation has led to the question that has actuated the complainant to bring this suit, to have it determined whether the legacies are all payable, the later being cumulative upon the earlier, or whether a later legacy

in any case shall be regarded as a substitute for an earlier legacy to the same person.

It is perceived that eight legatees were given more than one legacy each, and that six of those eight were given legacies prior to the making of the codicil of May 10th, 1893, and that three of those six and the remaining two legatees were given duplicate legacies of $1,000 each by the same instrument—the codicil of May 10th, 1893.   These eight legatees are all kin of the testatrix.   By the will, one of them, the niece, Rose M. Clymer, now Mrs. De Bryas, was given a watch and also $200 as a token of her aunt's affection, and, by the third codicil, specific legacies and the bequest of $1,000 here in question.   Another, Eugenia Macfarlane, a great-niece, was so considered by the testatrix that the fourth codicil was made solely for the purpose of giving her $1,000.   By the third codicil also two grandnephews, James R. Macfarlane and Edward Overton Ward, were bequeathed $500 each, and two great-nieces, Louisa W. Milliken and Eliza Ward Lynch, were bequeathed $1,000 each.

When the testatrix came to make the fifth codicil these six bequests, with eight others to other persons, stood unrevoked.   By the fifth codicil the eight other pecuniary legacies were revoked, but the six were suffered to remain.   After such revocation, by the same codicil the testatrix proceeded to make special bequests of nearly $100,000 to about sixty of her kin, among whom she included the six of her kin above mentioned, who then had unrevoked legacies.   It appears to me that the scheme of the fifth codicil was merely a general recognition of kin and that the failure to revoke the legacies to the six favored by previous codicils, in view of the fact that eight other similar legacies to previously-favored kin were by that very instrument revoked, emphasizes an intention that the special bounty to the six, for undisclosed reasons satisfactory to the testatrix, evidenced by their unrevoked legacies, was to remain unaffected by the general distribution to kin contemplated, and in which they, merely as kin, participated.

The last codicil does not profess to prescribe equality in the bequests to the several degrees of kin.   It expressly gives to a

nephew and niece double that which is given to others of their
degree and fails to make up to the children of a dead niece the
$5,000 their mother probably would have taken had she lived.
Hence it is an untenable insistence that the six legacies, not
expressly revoked by the fifth codicil, are impliedly revoked
under its language, " and I hereby ratify and confirm my said
will and codicils thereto in every respect save so far as any part
of it is inconsistent with this codicil," because they are incon-
sistent with a scheme of equality it is claimed to evince. It
does not evince such a scheme. Equality exists in fact only
where there is no reason or wish to the contrary.

But if the failure to revoke the six legacies, amidst other
revocations by the fifth codicil, does not afford satisfactory evi-
dence of the intention of the testatrix, it is proper to resort to
the settled rule of construction, that where two legacies are
given *simpliciter* to the same legatee by different instruments,
the presumption is that the later is cumulative, whether its
amount be equal or unequal to the former. *2 Wms. Ex. (R. &
T. ed.) 602 ; Theob. Wills. 114 ; De Witt* v. *Yates, 10 Johns.
156*.

The tenth clause of the third codicil, dated May 24th, 1882,
by which Mrs. De Bryas is given $1,000, is as follows : " I
give to my niece, Rose Clymer, and my great-nieces, Louisa
Ward and Bessie Ward, I give one thousand dollars each," and
the eighth clause of the fifth codicil, dated May 10th, 1893, by
which the same legatee is given $5,000, is as follows : " I give
to my two nieces, Mary and Rose N., children of my deceased
brother, William Bingham Clymer, each the sum of five thou-
sand dollars."

I regard these legacies as having both been given *simpliciter*.
The phrase " children of my deceased brother, William Bing-
ham Clymer," I account as mere description. But if I am to
regard it as a reason for the gift, to wit, because they constitute
a certain class of the kin of the testatrix, I am confronted with
a distinct reason for each of the bequests to Rose Clymer—for
the first, that the testatrix pleased to make this particular niece an
object of her bounty, and for the second, that in pursuance of a

Dickinson *v.* Overton.

general scheme of bounty to classes of kin, this niece is within one of the classes. The effect of the different purpose for making each legacy only strengthens the ·presumption that they are intended to be cumulative. *2 Wms. Ex. (R. & T. ed.) 605.*

Precisely the same comment is applicable to the bequest to Eugenia Macfarlane and her brother James. By the fourth codicil of June 29th, 1882, the bequest to Eugenia Macfarlane ·is : " I give to my great-niece, Eugenia H. Macfarlane, the sum of one thousand dollars ($1,000), clear of all taxes of every kind," and by the twelfth clause of the third codicil the bequest to James R. Macfarlane is: " To Edward Overton and James R. Macfarlane, my two great-nephews, I give $500 each," and by the fifteenth clause of the fifth codicil of May 10th, 1893, the bequest ˙ by which both James and Eugenia are given $1,000, is:

"I give to the children of my niece, Mary Macfarlane (who is deceased), viz., Ella M. Little, Mary C. Angle, Edward Macfarlane, James Macfarlane, Eugenia Macfarlane and Graham Macfarlane, each the sum of one thousand dollars."

The three others of the six legatees who have legacies by codicils prior to the last—Eliza Ward Lynch, Louisa W. Milliken and Edward Overton Ward—it will be remembered, are given not only legacies by earlier codicils than the last, but two legacies each by the last codicil. Eliza Ward Lynch and Louisa W. Milliken are the great-nieces styled Louisa Ward and Bessie Ward, in the tenth clause of the third codicil above quoted, and Edward Overton Ward is the great-nephew named in the twelfth clause of the third codicil, with James R. Macfarlane, as appears above.

By the fourteenth paragraph of the fifth codicil the testatrix provides as follows :

"I give to the children of my nephews and nieces named and mentioned in the tenth and eleventh clauses of this codicil each the sum of one thousand dollars."

By reference to the tenth and eleventh clauses of the fifth codicil it appears that all the living children of Eliza Overton,

the deceased sister of the testatrix, are named, and that among them, in the eleventh clause, Louisa Ward, the mother of these last-named legatees and of Mary Ward Mercur and Thomas Clymer Ward, is named. Stopping at this point the comment applied to the legacies to Mrs. De Bryas is applicable so far as Mrs. Lynch, Mrs. Milliken and Edward Overton Ward are concerned.

But here another question, as to all the five of the children of Louisa Ward, arises. Not only does the language of the fifth codicil, by its fourteenth clause, give each of them $1,000, but by its seventeenth clause also it repeats to the five children of Louisa Ward bequests of the same amount, to wit:

"I give to the children of my niece, Louisa Ward, viz., Mary Mercur, Edward O. Ward, Thomas C. Ward, Louisa Milliken and Louisa Meredith Ward each the sum of one thousand dollars."

Are they substitutional bequests for the bequests of the fourteenth clause?

The rule of construction is that, in absence of anything to manifest a contrary intent, two legacies of a quantity of equal amount bequeathed to the same legatee in one and the same instrument are considered as mere repetition of each other, and the legatee will take only one. *2 Wms. Ex. (R. & T. ed.) 602; Theob. Wills 114; De Witt v. Yates, 10 Johns. 156; Creveling's Executors v. Jones, 1 Zab. 573.* In the last cited of these cases the testator's granddaughters took either $400 or $800 each by the following bequest:

"I do give and bequeath unto my two granddaughters, Christiana Jones and Deborah Jones, each $400, to be paid to them by my executors. If they are not of age at my decease, I order my executors to pay each of them yearly and every year the interest of $400 until they shall arrive of age. I further order my executors to pay out of my estate to Christiana Jones $400 one year after my decease, and to pay Deborah Jones $400 two years after my decease, in full of their legacies bequeathed to them."

In the supreme court it was held by a closely-divided court that the testator's intention was that each granddaughter should take $800 (*4 Harr. 127*), and in the court of errors and appeals,

by a divided vote, that the intention of the testator was that they should each take $400. The rule of construction above stated was not invoked in the decision of either court, because it was thought that the peculiar language of the testator and its arrangement indicated his intention. However, in writing the opinion of the court of errors and appeals, Judge Randolph said : " Whether the granddaughters were to have a legacy of $400 each or two legacies of $400 each, all agree is a question of intention ; and occupying as the bequest does but ten consecutive lines, the testator must be presumed to have understood what that intention was and whether he was carrying it out. No inference of forgetfulness or confusion can arise, as there might if the sums were in different parts of the will, or will and codicil, or involved with other bequests or devises." And thus recognizes the reason of the rule, which he says is inapplicable to that case.

The present case differs from *Creveling* v. *Jones* in that the two bequests are not given by the same paragraph. By the eleventh clause of the last codicil the last bequests to nephews and nieces are given. By the twelfth clause bequests to grandnephews and nieces are commenced. By the twelfth and thirteenth clauses the children of the children of the brothers of the testatrix are provided for, and by the fourteenth clause the children of the five living children of the testatrix's sister are provided for, not by name, but as "the children of my nephews and nieces named and mentioned in the tenth and eleventh clauses of this codicil." This is an indirect ascertainment of the objects of her bounty, predicated upon her remembrance of the contents of the clauses of the codicil called tenth and eleventh. Passing on, the testatrix made provision for the children of her deceased niece, Mary Macfarlane, and in the sixteenth clause she gave to the children of those children. Then, without explanation, she proceeded by the seventeenth clause to again give the children of Louisa Ward each $1,000, and by the eighteenth clause to give to each child of those children $500. It is a fair inference, I think, that confusion resulted from the reference in the fourteenth clause to previous clauses, and

that when the eighteenth clause was prepared the testatrix for the time being lost sight of the first gift. It may be that when she resolved to give to the grandchildren of Mrs. Macfarlane $500 each, she thought that she should do the same for the grandchildren of Mrs. Ward, and that in undertaking to accomplish that purpose, forgetful of the fourteenth clause, she unwittingly adopted the formula used in case of Mrs. Macfarlane. There certainly is room, in the obscurity of the fourteenth clause, for confusion and mistake. I think that, by the seventeenth and eighteenth clauses the testatrix simply intended to put the Wards and Macfarlanes, as classes, upon the same footing, and that in absence of explanation of the repetition, the bequests by the seventeenth clause must be considered to be substitutional.

My conclusion upon the whole case is that the legacies in question are cumulative and not substitutional except in case of the legacies given to the children of Louisa Ward by the fourteenth and seventeenth clauses of the fifth codicil, and that in that case only one legacy of $1,000 to each child should be paid.