SARCE ET AL.
vs.
DUNOYER'S
EXECUTOR.

SARCE ET AL. *vs.* DUNOYER'S EXECUTOR.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where a prior will gave certain specific legacies, and the subsequent one
   made the testamentary executor universal legatee, without any mention
   of particular legacies and without any revocatory clause : *Held*, that the
   subsequent will did not revoke the particular legacies in the first, by
   omitting them and instituting a universal legatee ; but that the executor
   is bound to pay them.

The universal legatee is bound to discharge the particular legacies, and is
   in fact entitled only to the residium, after the payment of legacies
   and debts.

The plaintiffs, Marie Anne, Marie Henriette, Louis Victor
and Joseph Hypolite de Sarcé, all residing in France, are the
grand nephews and nieces of Rene Louis Dunoyer, who died
in New-Orleans, the 25th June, 1835, where his succession
was opened. Previous to his death, on the 2d April, 1833,
he made a nuncupative will by notarial act in which he
bequeathed to each of the nephews above mentioned, one
thousand two hundred dollars, and to the nieces two thous-
and dollars each, to be paid in cash as particular legacies.
He appointed Louis Pilié his testamentary executor, and
emancipated and instituted several colored people his univer-
sal legatees. On the 2d February, 1835, the testator made
a subsequent will without any *revocatory* clause, in which he
made several particular legacies, and appointed Raymond
Cazeaux his testamentary executor and universal legatee.
Both wills were received and admitted to probate. The
executor under the last was qualified and entered upon the
administration of the succession. He refused to pay the
legacies claimed by the plaintiffs, for which they instituted
suit, and pray judgment.

The executor, in his answer, denied that the first will had
any validity, and expressly averred that it was revoked by the
second will, under which he was acting.

L. Pilié, the testamentary executor under the first will, intervened and joined the plaintiffs in maintaining its validity and claimed the right to recover the legacies for them, (who are minors,) and to place the funds arising therefrom, at interest, etc., until the legatees arrive at the age of majority.

The judge of probates was of opinion there was nothing incompatible in the two wills, so far as the particular legacies claimed by the plaintiffs were concerned, and that they might, in this respect, both stand. The plaintiffs had judgment, from which the executor appealed.

*Grailhe*, for the plaintiffs, contended, that the first will not being revoked by the second, must stand in all respects where it is not incompatible with the first, for posterior testaments do not revoke prior ones, except as to different dispositions, or those that are contrary or incompatible with the first. *Louisiana Code*, 1686.

2. According to the jurisprudence of France, a legacy under universal title, is not incompatible with a universal legacy, made in a posterior testament. 9 *Sirey*, *2d Partie*, 255.

3. A particular legacy is not revoked by a universal one contained in a posterior will, in favor of another legatee. 28 *Sirey*, *2d Partie* 188.

4. Particular legacies in a prior will, which contains at the same time a universal legacy, are not revoked by a new universal legacy made in a posterior will. The particular legacies and the new universal legacy not being incompatible. There is nothing revoked but the first universal legacy. See *Cour Royale de Paris*. 31 *Sirey*, *2d Partie*, 306.

5. A particular legacy is not revoked by an universal one made in a posterior testament in favor of another legatee. *Cour Royale de Paris*, 33 *Sirey*, 2 *Partie*, 494.

6. The Court of Cassation has decided that the decisions of the Royal Court of France on questions concerning wills are interpretations of acts which cannot give rise to cassation. 28 *Sirey*, 1 *Partie*, 267.

7. The authority of Duranton on this subject, as invoked by the defendant's counsel has been disregarded by the

EASTERN DIST.
June, 1837.

SARCE ET AL.
. vs.
DUNOYER'S
EXECUTOR.

*Cours Royale. Sirey Jurisprudence de la Cour de Cassation,* au 1831, *2d Partie,* 306. 9 *Sirey, 2d Partie,* 255. 28 *Ibid.* 188.

*D. & J. Seghers,* for the defendant, insisted that a universal legacy annulled all legacies contained in a preceding or prior will.    9 *Duranton, No.* 447.    *Delvincourt, No.* 5. *Leclerc Droit Romaine, Vol.* 3, *page* 407–8.

2. The words of the second will in this case, in which the testator says, " a declaré vouloir persévérer dans le dit testament come étant l'expression de ses dernières volontés," are a formal revocation of the preceding will.    *Leclerc loco citato, Paillet, note* 5 *on article* 1036, *Napoleon Code.*

*Bullard, J.,* delivered the opinion of the court.

In the year 1833, the late R. L. Dunoyer made his last will or testament by public act; by which, among other dispositions, he bequeathed to the present plaintiffs, his grand nephews and grand nieces, certain specific legacies in money ; appointed Louis Pilié his testamentary executor, and instituted several slaves, whom he emancipates by the same act his universal legatees.    In 1835 he made another testament, also by public act, by which he also emancipates his slaves, and leaves them each a small legacy; appoints R. Cazeaux, the present defendant, his universal legatee and testamentary executor, and makes no mention of his nephews and nieces, or of their legacies by the former will.    This testament contains no express revocation of any previous one, and the present action is instituted to recover of the executor and universal legatee, the specific legacies under the former will. The only question, therefore, which this case presents for our solution is, whether the first testament has been tacitly revoked, so far as it concerns the particular legacies to the plaintiffs.

According to article 1686 of our code, "posterior testaments, which do not in an express manner revoke the prior ones, annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different."

If there be any part of the second testament incompatible with the particular legacies contained in the first, it must be that part which constitutes the defendant the universal legatee. But when it is considered that the universal legatee is bound to discharge the particular legacies, and is in fact entitled only to the residium after the payment of legacies and debts, the apparent inconsistency vanishes. The opinion of Duranton is the other way, but the reasoning of that learned professor is not satisfactory to our minds. His argument seems to lose sight of the essential quality of a universal legacy, to wit : the obligation on the part of the legatee to comply with the wishes of the testator as it relates to particular legacies; and we do not see how, according to his argument, the particular legacies contained in the same testament would be compatible with the institution of a universal legatee, for he who gives all to one has nothing left to bestow on others. The mere substitution of Cazeaux in the place of the manumitted slaves of the testator as residuary legatee, and of Pilié as executor, does not in a legal sense evince a change of will, as it relates to his nephews and nieces. We are sensible, that to the great mass of the citizens it will appear absurd, that a man can leave two last wills in force. But we are to ascertain the probable intentions of testators, not by reference to the common received notions on these subjects, but according to the provisions of law, and must presume, however gross the fiction, that the testator knew the law and even its subtleties as well as, if not better, than a professor of the faculty of Paris.

Our view of the question is fortified by repeated decisions in France, under a similar provision in the Code Napoleon. Several of the Royal Courts concur in causes identically the same with this, in adopting the principles which we assume as the basis of our judgment. These are the highest courts which, according to the peculiar judicial organization in that country, could take cognizance of such a question, inasmuch as the Court of Cassation never receives the judgments of the inferior tribunals upon the merits of the controversy, as between the parties, any further than the judgment

EASTERN DIST.
June, 1837.

SARCE ET AL.
vs.
DUNOYER's
EXECUTOR.

Where a prior will gave certain specific legacies, and the subsequent one made the testamentary executor universal legatee, without any mention of particular legacies, and without any revocatory clause: *Held*, that the subsequent will did not revoke the particular legacies in the first, by omitting them and instituting a universal legatee, but that the executor is bound to pay them.

The universal legatee is bound to discharge the particular legacies, and in fact, entitled only to the residium, after the payment of legacies and debts.

EASTERN DIST. complained of, violates any textual provision of the codes.

June, 1837.    *Merlin, verbo Cassation,· section 2.*    9 *Sirey, 2 Partie 255.*    28

ELKINS' HEIRS   *Sirey, 2 Partie,* 188.    31 *Sirey, 2 Partie,* 306.
*vs.*
ELKINS'
EXECUTOR.      It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be affirmed, with costs.