## No. 5955.

### SUCCESSION OF WILLIAM N. MERCER.

When posterior testaments do not expressly revoke prior ones, they must all be executed, unless the last tacitly revoke the first; but in the latter case the last prevail, since the testament is essentially the expression of the last will of the testator.

The doctrine that because the first will of the testator is not expressly and unconditionally revoked by the testator in the second will therefore the first will in its entirety remains in full force is not tenable, for by the provisions of article 1691 of the Civil Code wills are revoked tacitly as well as expressly.

Tacit revocation results from some other disposition of the testator or from some act which supposes a change of will. When, therefore, by the first will in the case before this court the testator constituted Celestine Eustis legatee for one thousand pounds and by the second a legatee for five hundred pounds, there was a tacit revocation. There was a confliction between the provisions of the two wills in regard to the amount of the legacy, the provision of the last will showing the intention to bestow upon the legatee five hundred pounds and not one thousand pounds.

In the cases of Mrs. Ximino and the minor, Anna Ximino, and the two asylums, no change was made in the legacies by the last will. This shows only the intention of the testator repeated in the second will that these legatees should receive the legacies granted by the first will.

Upon no sound principle of reasoning can it be maintained that when anterior or preceding testaments are not expressly and entirely revoked by subsequent ones all the provisions of all the testaments have effect, and that in such cases there is a cumulation of the legacies contended for by the opponents in this case.

APPEAL from the Second District Court, parish of Orleans. *Tissot, J.* *J. B. Eustis & Lazarus*, for Celestine Eustis, Antonio de Ximino and

wife, and Helen Cammack de Ximino, opponents and appellants. *Charles G. Ogden,* for St. Mary and St. Elizabeth Asylums, opponents and appellants. *T. H. Kennedy* and *William H. Hunt,* for Pierce Butler, executor and universal legatee, appellee.

TALIAFERRO, J. The testator left a large estate, and, having no forced heirs, disposed of the whole of it by testamentary dispositions, made at different times, in the forms of wills and codicils.. He appointed executors. The controversy in this case has arisen from a disagreement between the executors in regard to the interpretation of the provisions of the wills and codicils.

The account of Pierce Butler, one of the executors, was filed on the fifteenth of January, 1875, that of Wilmer Shields, the other executor, was filed on the twenty-first of January, 1875, and on the eleventh of February following was homologated so far as not opposed. The tableau of Butler, so far as not opposed, was homologated on the second of February, 1875. The tableau of Butler is opposed by Shields, Celestine Eustis, and Ellen ānd Anna de Ximino.

The executor Shields opposes the tableau of his co-executor in this, that he is thereon placed as legatee entitled to five thousand dollars, whereas he is entitled to twenty thousand dollars; that he is further placed on the tableau of Butler as entitled to one hundred shares of the capital stock of the Gaslight Company, when he is entitled to two hundred shares of that stock. He alleges, further, that he is entitled, under the wills, to the commissions allowed executors by law. He prays that his own tableau he homologated, or that the one presented by his co-executor be amended so as to conform to his own, and so as to allow him twenty thousand dollars instead of five thousand dollars, and two hundred shares of stock of the Gaslight Company instead of one hundred shares.

Celestine Eustis opposes the tableau of distribution presented by Butler on the ground that she is set down on his tableau as a legatee for twenty-five hundred dollars, whereas by the various testamentary dispositions of the testator she is entitled to fifteen hundred pounds sterling or the equivalent in gold, equal to seventy-five hundred dollars.

Ellen Cammack, wife of Antonio de Ximino, and the latter as guardian of his minor child, Anna Ellen de Ximino, oppose the tableau of Butler on the ground that the wife and the minor are each placed on it as legatee for twenty-five hundred dollars, whereas by the various wills and codicils of the testator they are entitled to five thousand dollars each, or one thousand pounds sterling.

Shields' account and tableau is opposed by the other executor on several grounds, the chief ground, however, being that by an erroneous interpretation he has regarded legacies as expressed in subsequent

testamentary dispositions just as they were in former dispositions as cumulative, and entitling the legatees to larger amounts than was intended by the testator; the executor, Butler, contending that the testator's bequests by subsequent acts of last will are mere repetitions of his purpose where the former dispositions do not conflict with the latter.

Judgment was rendered in the court below in favor of the account filed by the executor Butler. The one filed by the other executor, Shields, was rejected, the opposition thereto by Butler being sustained, and an order was rendered that the funds of the succession be distributed in conformity with the account and tableau presented by the executor Butler.

Appeals were taken from this judgment by Celestine Eustis, Helen Cammack, wife of Antonio de Ximino, and by the latter as natural tutor of his minor child, Anna Ellen de Ximino, and also by the St. Mary Asylum and the St. Elizabeth Asylum, interested as legatees.

On the eleventh of April, 1866, the testator, W. Newton Mercer, executed a will declaring that "I, W. Newton Mercer, of Laurel Hill, in Adams county, Mississippi, do make and declare this my last will and testament, revoking all other wills and codicils, bequests, or legacies." He executed a will on the twenty seventh of April, 1869, in which he declares as follows: "I, W. Newton Mercer, formerly of Laurel Hill, Mississippi, but now of New Orleans, in Louisiana, do make and declare this to be my last will and testament, revoking and annulling all other wills and codicils of previous dates in conflict or at variance with it."

Subsequently, by various codicils executed at different times, he made a few changes in the dispositions expressed in his last will, made some additional bequests, and supplied omissions that had occurred in executing his last will and testament, and, in a few instances, added explanations in reference to his purposes and intentions.

The article 1693 of our Civil Code declares that "posterior testaments which do not in an express manner revoke the prior ones annul in the latter only such of the dispositions there contained as are incompatible with the new ones, or contrary to them, or entirely different." This article is in substance the same as article 1036 of the Napoleon Code, from which it is derived.

The learning and research of the counsel representing the executor Butler have shown us clearly that from the interpretation given to this article by the jurisprudence of France, when posterior testaments do not expressly revoke prior ones they must all be executed, unless the last tacitly revoke the first; but that in the latter case the last prevail, since the testament is essentially the expression of the last will of the testator. The doctrine that because the first will of the testator is not expressly and unconditionally revoked by the testator in the second will therefore the first will in its entirety remains in full force, is not tenable, for by the

provisions of article 1691 of the Civil Code wills are revoked tacitly as well as expressly. Tacit revocation results from some other disposition of the testator, or from some act which supposes a change of will. When, therefore, by the first will, in the case before us, the testator constituted Celestine Eustis legatee for one thousand pounds, and by the second a legatee for five hundred pounds, there was a tacit revocation—there was a confliction between the provisions of the two wills in regard to the amount of the legacy; the provision by the last will showing the intention to bestow upon the legatee five hundred pounds and not one thousand pounds. In the case of Mrs. Ximino and the minor Anna Ximino and the two asylums, no change was made in the legacies by the last will. This shows only the will of the testator repeated in the second will that these legatees should recover the legacies granted by the first will. Upon no sound principle of reasoning do we see, can it be maintained that where anterior or preceding testaments are not expressly and entirely revoked by subsequent ones all the provisions of all the testaments have effect, and that in such cases there is a cumulation of the legacies, as contended for by the opponents in this case. We think the case clearly with the executor Butler, and approve the able judgment of the court *a qua.*

It is therefore ordered that the judgment of the district court be affirmed with costs.

Rehearing refused.