I So.2d 690

Succession of STALLINGS.

No. 36082.

March 31, 1941.

Percy S. Benedict, Chas. I. Denechaud, Chas. I. Denechaud, Jr., John T. Charbonnet, Francis P. Burns, and Claude W. Duke, all of New Orleans, for appellants.

Richard L. Voelker, Jr., of New Orleans (R. C. Davey, of New Orleans, of counsel), for Miss Genevieve Davey and another appellees.

Sidney G. Roos, of New Orleans, for opponent and appellee.

HIGGINS, Justice.

The district judge sustained the opposition of certain particular legatees to the executor's account, holding that the cash or moneyed legacies were cumulative and not disjunctive. He dismissed, with reservation to proceed by direct action, the opposition of the collateral heirs, who claimed half of the revenues produced from the community property from 1905 to 1940, stating that their claims should be made by petition and citation, and, as amended, he homologated the account. The executor and the residuary legatees appealed and, in this Court, filed exceptions of no right and no cause of action to the claim of the collateral heirs on the ground that under Act 152 of 1844, now Articles 915 and 916 of the Revised Civil Code of 1870, where the deceased spouse left no ascendants or descendants and did not dispose of his or her share in the community property by last will or testament, the surviving spouse was entitled to the usufruct of the deceased spouse's one-half of the community property during the natural remainder of his or her life, and that the usufruct does not cease upon the surviving spouse entering a second marriage.

The collateral heirs, the descendants of the sisters of the deceased's first husband, answered the appeal and have reiterated their claim to one-half of the revenues of the estate from 1905 to 1940, alleging that the usufruct in favor of the surviving spouse under the first marriage ceased to exist upon her second marriage in 1905.

Olive Andrews married Frank R. Johnson, who died intestate on May 21, 1901, leaving his widow in community and three sisters, but neither ascendants nor descendants. His succession was opened and his sisters were recognized as his heirs, entitled to his separate estate, and his widow, as the surviving spouse in community, entitled to one-half of the community property and to the usufruct of the other undivided one-half inherited by his three sisters. On September 5, 1905, the widow married Andrew Jack Stallings and continued to exercise and enjoy the usufruct on the property until her death on June 8, 1940. Her testament, which consisted of an olographic will and several olographic codicils thereto, was admitted to probate and the executor appointed and qualified. Upon filing the account, the particular legatees and the collateral heirs opposed it in the respects above mentioned.

In her last will, dated December 9, 1933, in which she revoked all other wills, the deceased made thirteen particular bequests, including the following:

"Mrs. Annie Barr Josler, Chicago, five thousand dollars.

*"Miss Martina Davey, five thousand dollars.*

"Miss May Richardson, five thousand dollars.

"Francis R. Johnson Coogan, five thousand dollars.

"Olive Keller Manion, Hollywood, Calif., five thousand dollars.

"Ida Dorsey, maid, five hundred dollars.

"Herbert Kuchil, gardener, five hundred dollars.

"John S. Walsten, chauffeur, five hundred dollars.

"All inheritance taxes shall be paid by my estate." (Italics ours.)

On December 9, 1935, she made a codicil to the will giving "To *Mrs. Margaret Coogan,* the inlaid table in my living room," and to Mildred Fossier she gave certain silver pieces and personal belongings. She also bequeathed her jewelry to Mrs. Elizabeth Lutz, *Mrs. Margaret Coogan, Miss Martina Davey,* (children of Mr. Johnson's deceased sisters), Miss May Richardson and Mildred Fossier. (Italics ours.)

On January 13, 1937, in a codicil, she bequeathed "to Miss Mildred Fossier $10,-000."

In another codicil, dated January 15, 1937, she stated *"I leave Margaret Davey Coogan ten thousand dollars. To Miss Genevieve Davey, five thousand dollars."* (Italics ours.)

In a codicil, dated March 13, 1938, she bequeathed *"Margaret Davey Coogan ten thousand dollars."* To "May Richardson ten thousand dollars and *five thousand dollars each to Martina and Genevieve Davey."* She also left to Margaret Coogan, Miss Fossier, Martina Davey, Genevieve Davey and May Richardson, respectively, certain pieces of jewelry and other movable property. (Italics ours.)

On August 1, 1938, she left cash legacies of $1,000 and $5,000, respectively, to other friends.

On June 1, 1939, she made another olographic codicil to the will adding the name of Loyola University as one of the universal legatees and, finally, stated *"My will otherwise is to remain unchanged."* (Italics ours.)

■    In interpreting the provisions of a testament, the intention of the testator controls, and, where the words are plain and unequivocal, forced interpretations should not be adopted. Theall v. Theall, 7 La. 226, 230, 26 Am.Dec. 501; Succession of Shaffer, 50 La.Ann. 601, 23 So. 739; Picard v. Succession of Picard, 179 La. 746, 155 So. 11; Succession of Vatter, 192 La. 657, 658, 661, 188 So. 732; McDavid v. Miller, 159 Ill.App. 1, and Revised Civil Code, Article 1712.

In the case of the Succession of Lefort, 139 La. 51, page 73 (par. 6), 71 So. 215,

222, Ann.Cas.1917E, 769, this Court considered the express or tacit revocation of a testament by a subsequent will and said:

"Does the testament of 1913 revoke in its entirety the one of 1909?

"Article 1691 (1684) provides:

" 'The revocation of testaments by the act of the testator is express or tacit, general or particular. It is express when the testator has formally declared in writing that he revokes his testament, or that he revokes such a legacy or a particular disposition. It is tacit when it results from some other disposition of the testator, or from some act which supposes a change of will. It is general when all the dispositions of a testament are revoked. It is particular when it falls on some of the dispositions only, without touching the rest.'

"It does not follow that because a testator has made two wills, the first is revoked.

"C. C. [art.] 1693 (1686):

" 'Posterior testaments, which do not, in an express manner, revoke the prior ones, annul in the latter only such of the dispositions there contained as are incompatible with the new ones, or contrary to them, or entirely different.'

"C. C. [art.] 1723 (1716):

" 'When a person has ordered two things, which are contradictory, that which is last written is presumed to be the will of the testator, in which he has persevered, and a derogation to what has before been written to the contrary.'

"There is no clause in the will of 1913 revoking, in an express manner, the will of

1909 or any of its provisions, or any previous will or legacy; if there is any revocation it must therefore be tacit or resulting from some disposition in the will of 1913 incompatible with the will of 1909 supposing a change of will.

"We find no general dispositions in the will of 1913 incompatible with the will of 1909; both make a series of particular legacies with the exception of the will of 1909, which donates 'the remaining cash and property at the disposal of the Archbishop for charitable purposes.' Some of these particular legacies are not very clear to one not familiar with the properties of the deceased. Of course, if any legacy contained in the will of 1909 is contrary to, or incompatible, or irreconcilable with, those contained in the will of 1913, the legacies contained in the will of 1909 are to that extent revoked.

" 'When posterior testaments do not expressly revoke prior ones, they must all be executed, unless the last tacitly revoke the first.' Succession of Mercer, 28 La.Ann. 564.

" 'It is true that when the testator leaves two wills, the clauses of the first which are contrary to or incompatible with those of the last are considered as having been revoked; and, for the purpose of ascertaining any such changes of intention, the two are to be considered as distinct, and as having been executed at different dates. But when the intentions of the testator have been ascertained by setting aside these clauses, which, under the application of this rule are to be annulled, the remaining dispositions are to be considered as forming

parts of one will, which it becomes the duty of the executors to execute as such.' Succession of Fisk, 3 La.Ann. 705, 706.

" 'Where a posterior testament contains no disposition from which a change of intention in the testator, with regard to a legacy in a prior will, can be presumed, the legacy will not be revoked.' City [of New Orleans] v. Fisk, 2 La.Ann. 78; Lyon v. Fisk, 1 La.Ann. 444, 455.

" 'Two wills made at different times may stand together in all the parts in which they are not inconsistent. But where they conflict the provisions in the last one will prevail.' Tournoir v. Tournoir, 12 La. 19.

" 'Where a prior will gave certain specific (particular) legacies, and the subsequent one made the testamentary executor universal legatee, without any mention of particular legacies and without any revocatory clause, held, that the subsequent will did not revoke the particular legacies in the first, by omitting them and instituting a universal legatee; but that the executor is bound to pay them.' Sarce v. Dunoyer['s Ex'r], 11 La. 220.

"See, also, Succession of Bobb, 42 La. Ann. 40, 7 So. 60; C.N. 1036–2 Dalloz, Codes Annotés Nos. 41, 42, p. 751, Code Nap. 1036, p. 754, No. 114 et seq., and numerous French commentators quoted."

In Thompson on Wills, 2d Ed., § 486, we find:

" * * * Where the same amount or sum of money is given twice to the same legatee by the same instrument, only one gift is presumed to have been intended; but two or more gifts are presumed to be cumulative where given by the same instrument if the amounts are different, or where the amounts are the same if given by different instruments; and where the amounts are different and given in different instruments, the presumption is stronger that they are cumulative. The general rule is that, when two legacies are bequeathed to the same person, one by the will and the other by the codicil, and the testator has given both the legacies simpliciter, the courts in such cases, in the absence of extrinsic evidence, consider that, as the testator has given twice, he must prima facie be intended to mean two gifts; and it seems to be immaterial whether the legacies are of equal or unequal amounts, or whether they are of the same or different natures."

In Section 1383, Page on Wills (2d Ed.), it is stated:

"If the legacies are given by different instruments, as by a will and a codicil, or by two or more different codicils, and there is nothing in the rest of the will to indicate that one gift is a repetition of the other, it will be presumed that such gifts are cumulative. This presumption exists even where the legacies are of the same amount." In re Davies' Will, 192 Iowa 723, 185 N.W. 578; Dickinson v. Overton, 57 N.J.Eq. 26, 41 A. 949; Hartwell v. Martin, 71 N.J.Eq. 157, 63 A. 754; Harrison's Estate, 196 Pa. 576, 46 A. 888.

See, also, In re Kellogg's Estate, 156 Misc. 703, 282 N.Y.S. 396; Matter of Weil's Estate, 151 Misc. 841, 272 N.Y.S. 477 and 69 C.J. 411, 412; 28 R.C.L., par. 195, p. 234; 51 A.L.R., par IX, p. 682.

The testatrix, in the instant case, knew that she had previously given the Misses Martina and Genevieve Davey each $5,000, and Margaret Davey Coogan the sum of $10,000, yet, in subsequent codicils, she gave each of these particular legatees legacies for the same respective amounts without in any way revoking the previous legacies or limiting the later ones to those only. This testatrix was unquestionably 'familiar with her will and the codicils thereto, because, in the final codicil dated June 1, 1939 (where she made one change by adding an additional universal legatee), she stated "My will otherwise is to remain unchanged." Thus, she clearly indicated that it was not her intention to revoke the previous provisions contained in her will and the codicils thereto. It is also to be noted that she increased the legacies in favor of other particular legatees and did not, in a single instance, reduce any of them. This further indicates the intention and purpose on her part to be liberal and generous with those whom she named particular legatees in the will and the codicils. If the testatrix intended that the opponents, the Misses Davey, were to receive only the sum of $5,000 each, and Margaret Davey Coogan only $10,000, it would have been a vain and useless thing for her to repeat what she had previously stated in her will and the codicils thereto. The fact that she did not, in the later codicils, limit the bequests to the subsequent ones, by the use of the word "only" or the words "no more" strongly indicates that the testatrix meant that two legacies should be given to these particular legatees and not just one. In other words, the legacies were cumulative and not disjunctive or repetitious.

In the case of Lyon v. Fisk, 1 La.Ann. 444, 455, the testator, in the first will, gave Mr. Lyon $5,000, and, in a later will, which did not revoke the former one, gave him a legacy of $2,500. The Court held that the law does not favor revocation by implication unless the repugnance between the wills is quite plain and that as the testator had verbally stated before dying that he did not care to have the first will destroyed but intended to keep both of them, the legatee was entitled, under the wills and the law, to both legacies.

In the instant case, the testatrix, in the final codicil to her will on June 1, 1939, after adding the name of Loyola University as a residuary legatee, expressly stated, "My will otherwise is to remain unchanged." This is the final and last statement of the testatrix with reference to her will and, certainly, it clearly shows that she intended that her will together with all of the codicils thereto, was to stand and be carried out and that none of the legacies were revoked. Furthermore, it was shown by the inventory that the appraised value of the estate was $946,000 and, therefore, there was more than sufficient money to pay the total or cumulative amount of all of the legacies. When this circumstance is taken into consideration together with the fact that the deceased in none of the codicils, expressly or tacitly, revoked any of the previous particular legacies, but, on the contrary, set up other legacies, and the only final change in the will was the

naming of an additional universal legatee, it is clear that the testatrix intended that all of the legacies were to stand and that the subsequent ones were not exclusive of the first ones.

Counsel for the executor and the universal legatees rely on Articles 1717 and 1723, Revised Civil Code, but the provisions of those articles are not controlling because the unambiguous terms of the will and the codicils show that the greater amount was intended and the subsequent codicils do not order contrary, repugnant, or inconsistent things.

The Succession of Mercer, 28 La.Ann. 564, and Robouam's Heirs v. Robouam's Ex'r, 12 La. 73, are not apposite because the court found that the testaments there involved either tacitly revoked the previous ones or that the second will or subsequent codicils were repetitious of or incompatible with the former wills. Such is not the case here.

We are also referred to the Succession of Vatter, 192 La. 657, 661, 188 So. 732, where the court refused to allow each of the five legatees $5,000, holding that in order to do so, would be writing into the will the word "each". In the instant case, to hold that the bequests are disjunctive or repetitious would be reading into the provisions of the codicils the word "only" or the words "no more".

The particular legatees, Mrs. Margaret Davey Coogan, Misses Martina, Davey and Genevieve Davey have answered the appeal taken by the executor and the two universal legatees and ask that the judgment of the district court allowing the legacies and authorizing their payment in full be amended so as to grant them legal interest on the respective amounts of their legacies from judicial demand until paid. Mrs. Margaret Davey Coogan made judicial demand for the delivery of her legacies in full on July 23, 1940, and the Misses Davey made their judicial demand for delivery on July 26, 1940. Under the law, they are entitled to legal interest, or 5%, on the amount of their legacies from these respective dates until paid. Articles 1626 and 1938, Revised Civil Code; Ventress v. Brown, 34 La.Ann. 448, 461; Succession of Stephens, 45 La. Ann. 962, 13 So. 197; and Seibert v. Conservation Comm., 181 La. 237, 245, 159 So. 375. The attorneys for the other litigants have not suggested any reasons nor have they cited any authorities to show that the particular legatees are not entitled to legal interest from judicial demand. The account and judgment below will be amended so as to allow these particular legatees legal interest on the respective amounts of their particular legacies, from the respective dates of judicial demand until paid.

Some of the legatees who are similarly situated to these opponents have not opposed the account and counsel for the executor and the universal legatees has asked the Court, in the event we differ with the executor's interpretation and construction of the will and the codicils, to reserve the rights of the other particular legatees identically situated to claim both of the bequests, and that the executor be authorized to pay them. This reservation will be made.

The question of whether or not the deceased's remarriage in 1905 terminated the legal usufruct in her favor as surviving spouse depends upon the interpretation of the provisions of Act 152 of 1844, which reads as follows:

"Section 1. Be it enacted by the Senate and the House of Representatives of the State of Louisiana, in General Assembly convened, That in all cases hereafter, when either husband or wife shall die, leaving no ascendants or descendants, and without having disposed by last will and testament, of his or her share in the community property, such share shall be held by the survivor in usufruct during his or her natural life. (Article 915, R.C.C.1870)

"Section 2. Be it further enacted, etc., That in all cases when the predeceased husband or wife shall have left issue of the marriage with the survivor, and shall not have disposed by last will and testament, of his or her share in the community property, the survivor shall hold in usufruct, during his or her natural life, so much of the share of the deceased in said community property as may be inherited by such issue: Provided, however, that such usufruct shall cease whenever the survivor shall enter into a second marriage." (Article 916, R.C.C. 1870)

Section 1 of the foregoing Act, Article 915, Revised Civil Code 1870, was amended by Act 57 of 1910 and the words "held by survivor in usufruct during his or her natural life," were changed to "inherited by the survivor in full ownership."

The above amendment is not effective here, because Mr. Johnson died in 1901,

but, if the amendatory statute were applicable, Mrs. Johnson would have inherited her husband's half interest in the community property in full ownership. This amendment is significant for it shows that in order to give the survivor, when there are no ascendants, descendants, or will to the contrary, the full ownership of the deceased's one-half interest in the community property instead of only the usufruct thereon during his or her natural life, it was necessary to amend only Article 915 of the Revised Civil Code of 1870. There can be little doubt that Section 1, Art. 915, and Section 2, Art. 916, cover entirely different situations in the marital and family relations of the deceased and surviving spouses.

Prior to the enactment of Act 152 of 1844, under the laws of this State, the deceased spouse's interest in the community property, undisposed of by last will and testament and where there was no issue of the marriage and no surviving mother or father, was inherited by his legal heirs, or brothers and sisters. Matchler v. Bank of Lafayette, 31 La.Ann. 120, and article 35, p. 152 and Article 908 of the Civil Codes of 1808 and 1825, respectively.

Counsel for the collateral heirs, as opponents of the account, contend that since the General Assembly in 1844 made a drastic or harsh change in the law by granting the surviving spouse the usufruct of the half interest in the community of the deceased spouse, under circumstances where there was no will to the contrary, no mother or father, and no issue of the marriage, the mildest legislative intent must be attributed to the statute by holding that the proviso of

the second section thereof (or the same provision contained only in Article 916 of the Code of 1870) should likewise be held to modify the provisions of Section 1 of the statute, or Article 915, R.C.C.1870.

In Corpus Juris, Vol. 59, verbo, "Statutes," paragraph 640, page 1090, the rule is stated as follows:

"The operation of a proviso is usually and properly confined to the clause or distinct portion of the enactment which immediately precedes it, and does not extend to or qualify other sections, unless the legislative intent that it shall so operate is clearly disclosed; * * *."

In the Succession of Lee, 1854, 9 La.Ann. 398, the deceased spouse left a mother and brothers and sisters. The surviving spouse claimed the usufruct on the deceased's interest in the community property under Act 152 of 1844 and contended that as Section 2 gave the usufruct to the survivor in preference to descendants, a fortiori, the legislators intended to prefer the surviving spouse to collaterals. In holding that the survivor was not entitled to the usufruct of the deceased's interest, the court said:

"The right of usufruct in favor of the surviving partner as to that share is derived solely from the Statute. Being derived solely from the Statute, it can only be claimed in the cases designated in that Statute." See also Lehman v. Lehman, 130 La. 960, 58 So. 829.

The converse of the above, of course, is necessarily true, i. e., that the surviving spouse is entitled to the usufruct for the period of time expressly granted by the statute.

In the Succession of Planchet, 1877, 29 La.Ann. 520, the wife died in 1864, intestate, and without ascendants or descendants, but left brothers and sisters. The widower claimed that he was entitled to one-half of the community estate as owner "and to the usufruct for life of the other half." The court said:

"By law, at the death of the wife, the husband became absolute owner of one half the effects and property of the community, and usufructuary for life of the remainder. * * *

"So far as the community property was concerned, the husband was in possession of right, as head of the community, and the heirs were not entitled to any part of it, except the one half of the residuum after paying the small amount of community debts; and this half they could not have claimed during the life of the husband, the legal usufructuary."

In the Succession of Teller, 49 La.Ann. 281, 21 So. 265, the Court, in dealing with Articles 915 and 916, R.C.C. (1870), said:

"The purpose was, unless the deceased spouse disposed of his share of the community, to preserve intact the community property to be enjoyed by the surviving spouse during his or her natural life or widowhood, when there were children of the marriage. * * * the Code establishes this usufruct when there are no children of the marriage, and there is also the usufruct established with qualification when there are children."

In Saunders' Lectures on the Civil Code of Louisiana, in reference to Act 152 of 1844, Articles 915 and 916, Civil Code of 1870, at page 192, the author states:

"Where there are no children (no ascendants or testamentary disposition to the contrary), the surviving spouse takes the usufruct of the deceased interest in the community during life, and he or she may marry as many times as Henry VIII, without in any way impairing the existence of that usufruct." (Parentheses ours.)

A mere reading of Sections 1 and 2 of Act 152 of 1844 clearly shows that two entirely different situations concerning the deceased and the surviving spouse in community were intended to be covered. The codifiers of the Code of 1870 took cognizance of the above express legislative intent by separating these sections and placing them in two different articles—915, 916. The members of the General Assembly of 1910 also recognized that the legislators of 1844 intended to cover two substantially different situations by dividing Act 152 of 1844 into two sections and, apparently, agreed with the codifiers, who made two articles out of Act 152 of 1844, because, in enacting Act 157 of 1910, so as to give the surviving spouse the ownership of the deceased's one-half interest in the community, where there were no ascendants, descendants or will to the contrary, they did not in any way alter the provisions of Article 916, but simply amended Article 915 of the Code.

It is our opinion that the proviso in Section 2 of Act 152 of 1844 or Article 916 of the Code of 1870 does not limit or modify the provisions of Section 1 of the statute or Article 915 and, therefore, the usufruct in favor of the deceased, as the surviving spouse in community, did not cease upon her marriage in 1905 to Mr. Stallings. The trial judge should have dismissed outright the opposition of the collateral heirs to the account and it was error for him to reserve them the right to proceed against the estate of the deceased by a direct action.

For the reasons assigned, it is ordered, adjudged and decreed that the exceptions of no right and no cause of action to the claims of the collateral heirs to one-half of the rents and revenues of the estate for the period from 1905 to 1940 are sustained and the opposition of the collateral heirs is dismissed.

It is further ordered, adjudged and decreed that the judgment of the district court be amended so as to allow Mrs. Margaret Davey Coogan, and Misses Martina Davey and Genevieve Davey legal interest on the full amount of their respective legacies from judicial demand or from July 23, 1940, and July 26, 1940, respectively, until paid.

It is further ordered, adjudged and decreed that the account of the executor and the judgment of the district court be and the same is hereby amended by reserving to all of the particular legatees, who were granted more than one legacy in the will and the codicils thereto, their rights to claim their cash or moneyed legacies, so that the executor might be properly authorized by the district judge to pay the

same; and, in all other respects, the judgment homologating the executor's account is affirmed; all costs of court to be paid by the succession.

O'NIELL, C. J., and LAND, J., absent.