EDWARDS, Judge.
Intervenor, Julius Wilson Cole, appeals a judgment denying him the status of princi *168 pal beneficiary of certain property presently in trust. We affirm.
Irma Wilson Reeves died in Baton Rouge on April 30, 1976, leaving no forced heirs. By olographic will dated December 14,1962, she bequeathed an estate worth $799,065.93 to Julius Wilson Cole and Charles Julius Cole, Jr., nephews; Catherine Cole Petty, niece; and Cathline S. (Kitty) Cole, great niece.
Three particular legacies constitute eighty-four percent of the estate’s bulk:
1. Certain property located in East Baton Rouge Parish and worth $75,000 was left to Julius Wilson Cole and Catherine Cole Petty, share and share alike.
2. Certain property located in St. Helena Parish and worth $288,001 was also left to Julius Wilson Cole and Catherine Cole Petty, share and share alike.
3. Certain other property located in St. Helena Parish and worth $311,562 was left to Charles Julius Cole, Jr.
The dispositive provision leaving St. Helena Parish property to Charles Julius Cole, Jr., reads as follows:
“2. I give and bequeath to my nephew, Charles Julius Cole, the following to wit:
(a) Eleven hundred acres of land, more or less situated principally in ward 2, St. Helena Parish, Louisiana, being my part of the T.D. Lindsey place and what is known as the Charles C. Reeves pasture place on the highway between Greensburg and Liverpool.”
The three particular legatees favored by the above large bequests were also named residuary legatees:
“7 All of the rest of my property, real and personal, of which I may die possessed, I give and bequeath to Charles Julius Cole, Catherine Cole Petty and Julius Wilson Cole, share and share alike.”
By codicil dated December 1,1967, decedent modified her prior will as follows in pertinent part:
“I bequeath all of that land bequeathed to Charles Julius Cole to the Fidelity National Bank of Baton Rouge, La., but in trust. Charles Julius Cole shall be the income beneficiary of the trust and his children shall be the income beneficiaries of that trust after his death. The trust shall continue as to the interest of each of his children throughout the life of each child.”
The codicil contains no provision indicating decedent’s dispositive intentions regarding the property in trust at the conclusion of that trust.
By petition for declaratory judgment, plaintiffs, Charles J. Cole, Jr., and his children, Charles J. Cole, III, Ruby L. Cole, Sally Ann Cole, Cathline S. (Kitty) Cole, wife of Donald Ingram, and Carmen H. Cole Delgado sought a decree that the children of Charles J. Cole, Jr., were the principal beneficiaries of the testamentary trust.
Julius Wilson Cole, a residuary legatee, intervened and most vigorously urged that, as a residuary legatee, he, his heirs or assigns should be declared principal beneficiary of a one-third interest in the property composing the trust. The gravamen of in-tervenor’s claim was that by the codicil of December 1,1967, decedent revoked disposi-tive provision “2” of her will which had devised the St. Helena Parish property to Charles Julius Cole, Jr. Intervenor, as a residuary legatee, would be due a one-third interest in the thus undisposed of property.
The matter was submitted on briefs and the record. Subsequently, judgment was signed in favor of plaintiffs declaring Charles J. Cole, III, Ruby L. Cole, Sally Ann Cole, Cathline S. (Kitty) Cole Ingram and Carmen H. Cole Delgado, the children of Charles J. Cole, Jr., to be the principal beneficiaries of the Irma Wilson Reeves trust. The intervention was dismissed at Julius Wilson Cole’s cost. He appeals.
Appellant specifies that the trial court erred in 1) finding that the codicil did not revoke provision “2” of the will and 2) naming the children of Charles Cole as principal beneficiaries.
*169 In brief, appellant stresses that decedent’s placing the St. Helena property in trust was a disposition of less than full ownership. Counsel argues that as a lesser disposition of the same thing, there is a presumed revocation of the former testament. Succession of Mercer, 28 La.Ann. 564 (1876), is cited as authority. We do not agree.
LSA-C.C. Art. 1693 states the conditions under which a posterior testament tacitly revokes prior ones.
“Posterior testaments, which do not, in an express manner, revoke the prior ones, annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or contrary to them, or entirely different.”
In the instant case, the only real question is whether decedent’s codicil is “incompatible with,” “contrary to” or “entirely different” from the original disposition.
Contrary to the contention of appellant’s counsel, there is no presumption that the establishment of a spendthrift trust necessarily revokes a prior bequest of the principal. In fact, there is a presumption, subject always to the testator’s intent, that a second bequest of the same thing is to be cumulated with the original bequest.
Succession of Mercer, supra, did hold that a certain legacy of 1000 pounds sterling was revoked by a later codicil leaving 500 pounds to the same legatee. Mercer also held that a legatee left the same legacy twice could not cumulate the bequests. Giving no explanation as to how it had divined decedent’s revocatory intent, the court simply opined:
“there was a confliction between the provisions of the two wills in regard to the amount of the legacy; the provision by the last will showing the intention to bestow upon the legatee five hundred pounds and not one thousand pounds.”
The Mercer court ignored prior jurisprudence and, without stating any cogent reasons, found a revocation. Mercer is not a correct statement of the law. Furthermore, the case has been both criticized and flatly overruled in part.
In Lyon v. Fisk, 1 La.Ann. 444 (1846), two successive wills made bequests of $5000 and $2500, respectively, to Joseph H. Lyon. Lyon was allowed to cumulate the bequests because decedent’s last words were “Keep both” and because “the law does not favor a repeal by implication, unless the repugnance be quite plain(.)”
In Succession of Stallings, 197 La. 449, 1 So.2d 690 (1941), repeated bequests of $5000 were made to Miss Martina Davey. Citing Lyon v. Fisk with approval, the court allowed cumulation. That the second bequest in Lyon was lesser than the first while the legacies in Stallings were of equal size was of no moment. Succession of Mercer, supra, and Robouam’s Heirs v. Robouam’s Executor, 12 La. 73 (1838), were distinguished as cases in which the second documents were found to have revoked the first.[1]
In Succession of Homan, 202 La. 591, 12 So.2d 649 (1943), the effect of two codicils was at issue. The earlier codicil bequeathed thirty shares of homestead stock to Dell Sadler and twenty shares to Edna K. Gaudet. A later codicil bequeathed thirty shares of Security Homestead stock to Sadler and twenty shares in Guaranty Homestead to Gaudet. Citing Succession of Stallings with approval and overruling both Succession of Mercer and Robouam’s Heirs v. Robouam’s Executor, supra, at least as to the question of single or double legacies of the same amounts to the same legatees, the court permitted cumulation.
Appellant contends that Succession of Homan overruled Succession of Mercer only on the issue of identical legacies and that Mercer is still viable where, as in the *170 present case, the second bequest is smaller than the first. As a technical matter, counsel is correct. It is clear, however, that Homan overruled Mercer to the limited extent it did because only the question of identical bequests had been raised. A complete overruling of Mercer would have involved mere dictum.
Even though part of Mercer has not yet been formally overruled, it is subject to the same criticism that resulted in a partial overruling. Essentially, no sound reasons were provided to justify the court’s finding of a revocatory intent on the testator’s part. In addition, the court in Mercer erroneously stated:
“Upon no sound principle of reasoning do we see, can it be maintained that where anterior or preceding testaments are not expressly and entirely revoked by subsequent ones all the provisions of all the testaments have effect, and that in such cases there is a cumulation of the legacies, as contended for by the opponents in this case.”
Such language flies directly in the face of Article 1693.
We believe the jurisprudence of Lyon v. Fisk, Succession of Stallings and Succession of Homan to be correct statements of the rule that cumulation is presumed. We have no doubt that Succession of Mercer is entirely unsound. Until the Supreme Court overrules Mercer in its entirety, it can be narrowly restricted to the facts of the case.
Our conclusion that there is a presumption of cumulation even where the second bequest is lesser is squarely in agreement with doctrine and the jurisprudence of other jurisdictions, some of which is noted below.
Page on Wills, Bowe-Parker Revision, 1960, section 58.3 states:
“If legacies are given by different instruments, as by a will and a codicil, or by two or more different codicils, and there, is nothing in the will or codicils to indicate that one gift is a repetition of the other, it will be presumed that such gifts are cumulative. This presumption exists even where the legacies are of the same amount, or where the legacies are similar though not the same, and is strengthened where the amount given in the second instrument is different from that given in the first. Such presumption is said to be based on the theory that the testator must have known of the first gift and would have provided for its revocation if he had desired such result, and the presumption is strengthened by language in the second instrument which shows that testator had in mind the gifts made in the first will.” (Footnotes omitted — emphasis supplied)
Thompson on Wills, 3d Ed., section 486 states:
“Where the same amount or sum of money is given twice to the same legatee by the same instrument, only one gift is presumed to have been intended; but two or more gifts are presumed to be cumulative where given by the same instrument if the amounts are different, or where the amounts are the same if given by different instruments; and where the amounts are different and given in different instruments, the presumption is stronger that they are cumulative. The general rule is that, when two legacies are bequeathed to the same person, one by the will and other by the codicil, and the testator has given both the legacies sim-pliciter, the courts in such cases, in the absence of extrinsic evidence, consider that, as the testator has given twice, he must prima facie be intended to mean two gifts; and it seems to be immaterial whether the legacies are of equal or unequal amounts, or whether they are of the same or different natures.” (Footnotes omitted — emphasis supplied)
In Dewitt v. Yates, 10 Johns. (N.Y.) 156 (1813), the court stated that cumulation was presumed and that the burden of rebutting the presumption fell on the party opposing same.
A will in Stultz v. Kiser, 37 N.C. 538 (1843), made residuary legatees of the heirs. A later codicil bequeathed $700 each to certain heirs. Cumulation was permitted.
*171 In Appeal of Manifold, 126 Pa. 508,19 A. 42 (1889), fifty pounds per year was bequeathed by will. A subsequent codicil gave to the same legatee $100 per year, a lesser sum than fifty pounds. Finding no evidence that the codicil’s bequest was of a substitutionary nature, cumulation was allowed.
In Kemp v. Hutchinson, 110 S.W.2d 1126 (Kansas City Ct. of App., Mo. 1937), testator, by will, left fifty percent of his estate in trust for a brother-in-law. A later codicil giving $500 and some furniture to the brother-in-law was held cumulative and not substitutionary.
In re Cole’s Will, Sur., 215 N.Y.S.2d 796 (1961), involved a will bequeathing $1500 and a third codicil leaving $10,000. Citing Dewitt v. Yates, supra, the court found the bequests cumulative and noted that the presumption of cumulation was not overcome simply because the codiciliary bequest was greater.
The court, in In re Estate of Heppe, 440 Pa. 328, 269 A.2d 687 (1970), cited Appeal of Manifold, supra, and found two codicils, each for $5000, to be cumulative.
Appellant urges that LSA-C.C. Art. 1717[2] mandates a finding of revocation. We disagree. Article 1717 only applies when the quantity bequeathed is uncertain. Such is not the case here since the presumption of cumulation helps make certain the amount bequeathed.
Though a presumption of cumulation exists, that presumption, like all other rules for the interpretation of wills, is only a means to the end. Principally, courts must endeavor to ascertain the testator’s intentions and all rules of construction must give way in the face of proven intent. Carter v. Succession of Carter, La., 332 So.2d 439 (1976); Succession of LaBarre, 179 La. 45, 153 So. 15 (1934); Succession of Blakemore, 43 La. Ann. 845, 9 So. 496 (1891).
The testator’s intention must be ascertained from the whole will, and effect must be given to every part of the will as far as the law will permit. No part of a will should be rejected, except what the law makes it necessary to reject. Where there is a choice of interpretations, one of which will effectuate, and the other defeat, a testator’s intention, the court should interpret so as to carry out the testator’s wishes. Succession of LaBarre, supra.
These general principles, together with the rule of Civil Code Art. 1693, mandate that we interpret both the will and the codicil of decedent so as to effectuate both, unless the codicil is incompatible with, contrary to, or entirely different from the original bequest to Charles J. Cole, Jr., in which case the codicil would control.
In the original will, decedent carefully arranged for the distribution of her entire estate. Two nephews and a niece were the primary beneficiaries while one small legacy was left to a great niece. There is no doubt that decedent intended to give the eleven hundred acres of St. Helena Parish land to Charles J. Cole, Jr.
Decedent’s codicil created a spendthrift trust. That property, previously bequeathed to Charles J. Cole, Jr., was placed in a trust scheduled to last throughout the lives of Charles J. Cole, Jr., and his children.
There is not one shred of evidence in the codicil that decedent intended to entirely revoke her prior donation to Charles J. Cole, Jr. Since the codicil pointedly refers to the initial bequest, decedent’s continuing awareness of it is certain. Under those circumstances, her decision to create a trust while not expressly revoking the first donation can only be viewed as showing testatrix’ intent not to revoke the initial bequest but only to modify same. Page on Wills, supra.
The trust, established by codicil, merely prevented waste of the St. Helena property for two generations. Charles J. Cole, Jr., and his children were to receive all *172 income benefits from the trust. Because the trust was to last for a specific period, it only is contrary to the original will for that period. LSA-C.C. Art. 1693.
Counsel for appellant urges that because the codicil limited plaintiffs’ rights at all, decedent intended to give less and therefore the original bequest must be considered revoked. Counsel erroneously ignores the trust’s limited time of existence which obviously curtails the degree to which the codicil is incompatible with the original bequest.
A deposition must be understood in the sense in which it can have effect, rather than that in which it can have none. LSA-C.C. Art. 1713. The original disposition to Charles J. Cole, Jr., was of property worth $311,562. Were appellant’s position adopted, some $207,708 in property would be redistributed to Julius Wilson Cole and Catherine Cole Petty.
The original bequest will be given far more effect by permitting the trust to expire and by delivering the corpus to whom it was originally bequeathed.
Appellant urges that Succession of McCrary, 246 So.2d 899 (La.App. 2d Cir. 1971), writs refused 258 La. 770, 247 So.2d 866 (1971), and 258 La. 777, 247 So.2d 869 (1971), controls. McCrary is simply not applicable. In that case, testator bequeathed all his property to his wife for “so long as she does live.” The appellate court held that the wife was due only a usufruct and that at her death, the estate was to be distributed by operation of law to her husband’s collateral heirs rather than to the wife’s descendants.
In the present case, the property at issue was bequeathed prior to formation of the trust. At the trust’s expiration, the property will be distributed as per the original bequest. The property is accounted for and is therefore not available to the residuary legatees.
Based on the law and evidence, plaintiffs must prevail. However, the correctness of our decision is verified by appellant’s own supplemental brief.
Both parties and the trial court agreed that this case was to be decided based on the will and codicil and without the aid of any extrinsic evidence. Plaintiffs, however, took the deposition of Catherine Cole Petty, one of the residuary legatees who stood to gain $103,854 if the original bequest were found revoked, and proffered the deposition. For some reason, the deposition was not included in the record as a proffer. In his supplemental brief, counsel for appellant quotes from the deposition and avers that:
“in effect, not only was Mrs. Petty’s deposition admitted, but her testimony formed the basis for the lower court’s decision. In short, the lower court permitted Mrs. Reeves’ property to pass in accord with hearsay testimony of a relative, which contradicted the express terms of the codicil.”
We do not know whether the trial court considered the deposition at all. Such appears unlikely, in view of the deposition’s absence from the record. Furthermore, that the trial court judgment was in accord with the deposition proves nothing except that the law and evidence mandated a result which happens to coincide with testimony given by the deponent.
Because declarations against interest by a declarant not a party to the suit are an exception to the hearsay rule, Campbell v. American Home Assurance Company, 260 La. 1047, 258 So.2d 81 (1972), and because appellant has so conveniently provided us with the pertinent part of the deposition of Catherine Cole Petty, we reproduce that part.
“Q. That bequest is mentioned again in what purports to be Mrs. Reeves’ codicil. What she says, T bequeath all of that land bequeathed to Charles Julius Cole to the Fidelity National Bank of Baton Rouge, Louisiana, but in trust.’ Did Mrs. Reeves ever discuss her will or codicil with you.
A. Yes, she did.
Q. Did she discuss it after Mrs. Imogene Cole died?
*173 A. Before and after.
Q. Specifically, did she ever discuss with you this bequest to Charles Julius Cole?
A. Yes.
Q. And what did she say that she intended?
A. She intended leaving him this particular piece of property which she called the pasture place. It is a piece of property that she and her husband kept cattle on, it has been in the family since 1801 and I have ridden piggyback on her husband’s back many times over it and she always said that it was to be Charles’, she has always said that. I knew she had willed it to him, I wasn’t sure of that until — I don’t know, maybe after Mother’s death and I guess I had a little tinge of jealousy at the moment because I thought something that has been in the family that long, I wish I had just one acre of it, you know. Anyway, she intended it to be Charles’ and to be Charles' children and forever thereafter and not to be mine or anybody else’s at the death of his children.
Q. Now, she mentions him, Charles, as income beneficiary and then apparently mentions his children as income beneficiaries, can you state what her intention was, did she ever discuss it with you with reference not as to income but as to ultimate ownership of the land or the principal itself of the trust?
A. She intended it to go to Charles and his heirs from here on out. ”
(Emphasis presumably supplied by appellant.)
As a residuary legatee, Catherine Cole Petty has equal standing with Julius Wilson Cole. Despite the fact that failure to intervene might cost her $103,854, she chose not to and voluntarily testified that she knew decedent intended for the property at issue to go to Charles Julius Cole, Jr., and his family, rather than to her or intervenor, Julius Wilson Cole.
For the foregoing reasons, the trial court judgment is affirmed. All costs of the intervention and this appeal are to be paid by Julius Wilson Cole. All other costs are to be borne by the estate.
AFFIRMED.

. Robouam’s Heirs involved two wills. The first left $500 each to A. and S. Lefebvre with a proviso that if only one should survive the testator, that legatee would receive $1000. A second testament made the same dispositive bequests but excluded the survival provision. Without explanation, the court found the second bequest merely repetitive and declared “it at least doubtful whether the testator intended a double legacy to each legatee.” The bequests were held substitutionary.

. Art. 1717 provides:
“If it can not be ascertained whether a greater or less quantity has been bequeathed, it must be decided for the least.”