961 So.2d 439 (2007)
Succession of Beverly L. WHITE.
No. 2006 CA 1002.
Court of Appeal of Louisiana, First Circuit.
May 4, 2007.
Rehearing Denied June 28, 2007.
*440 Julian J. Rodrigue, Covington, Counsel for Appellee Succession of Beverly L. White, Lois White King, Executrix.
Frederick S. Ellis, William J. Dutel, Covington, Counsel for Appellants Suzanne White Davis, Mary Juliette White Chappo, John de Brousse White, Lauretta White Bordelon, Melissa White Trahern, Melinda White Greer and Joy Noel White Moore.
Before: PARRO, GUIDRY, and McCLENDON, JJ.
McCLENDON, J.
In this succession case, some of the deceased's nieces and nephews, Suzanne White Davis, Mary Juliette White Chappo, John de Brousse White, Lauretta White Bordelon, Melissa White Trahern, Melinda White Greer, and Joy Noel White Moore (heirs), appeal the trial court's (1) denial of their petition to annul the December 2002 probated testament (attached as appendix A) and (2) declaration of the July 1994 document (attached as appendix B) as a valid will and testament of Beverly L. White. After a thorough review of the record before us, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
The decedent, Ms. White, died on February 26, 2004. A succession was opened, and a petition for probate of the olographic testament dated December 2002 was filed on March 22, 2004. The only instruction provided in the 2002 document was the naming of Mrs. Lois White King, the deceased's *441 sister, as executrix. Subsequently, the trial court appointed Mrs. King as the executrix, and the 2002 document was recognized as a valid testament.
While going through papers at the decedent's home, the executrix's husband and one of the succession attorneys found the 1994 document and submitted it for probate. The 1994 document was in the form of an olographic will. See LSA-C.C. art. 1575. It was dated and signed by the Ms. White at the beginning and the end of the three page document. On the reverse side of the last page, the testatrix wrote a note, which was not accompanied by a signature or date.
The heirs, who were named in the 1994 document, filed a petition to annul the probated 2002 testament, and filed an opposition to the probate of the 1994 document. After a hearing, which included testimonial evidence, the trial court signed a judgment that denied the heirs' petition to annul the 2002 testament. In a separate judgment, the trial court declared the 1994 document to be a valid last will and testament of the deceased. The heirs appealed.
On appeal, the heirs primarily allege that the 1994 testament does not contain the requisite testamentary intent, and, for that reason, the document was not a valid testament. In the absence of a valid last will and testament disposing of the estate, Ms. White died intestate, and the heirs would possibly inherit a larger share of the estate. As to the 2002 testament naming Mrs. King as executrix, the heirs argue that it did not mention the 1994 document and was not a codicil to the earlier document. Thus, they argue that the two documents cannot be read together as one will or testament.

APPLICABLE LEGAL PRECEPTS
"A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable." LSA-C.C. art. 1469. To be a valid testament or will, a document must meet the requisites of form and contain testamentary intent, which is to say, "it must, by its own language, show on its face that it purports to dispose of the property of the testator on his death." Succession of Shows, 158 So.2d 293, 295 (La.App. 1 Cir.1963), affirmed, 246 La. 652, 166 So.2d 261 (1964); Succession of Hammett, 183 So.2d 416, 417 (La.App. 4 Cir.), writ refused, 249 La. 66, 184 So.2d 735 (1966); see LSA-C.C. arts. 1570 & 1573.
"The intent of the testator controls the interpretation of his testament." LSA-C.C. art. 1611 A. The preference of interpretation is the one that gives effect. LSA-C.C. art. 1612. "[T]he first and natural impression conveyed to the mind on reading the will as a whole is entitled to great weight. The testator is not supposed to be propounding riddles, but rather to be conveying his ideas to the best of his ability so as to be correctly understood at first view." Carter v. Succession of Carter, 332 So.2d 439, 442 (La.1976). If two possibilities present themselves, the document must be read to carry out the "wishes" of the testator, not defeat them; to support testacy, not intestacy. Succession of Reeves, 393 So.2d 166, 171 (La.App. 1 Cir.1980), application denied, 398 So.2d 529 (La.1981); Carter, 332 So.2d at 442. With a document that is written without aid of counsel, the "law is indulgent in such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed." Carter, 332 So.2d at 442; see LSA-C.C. 1612. If a later testament neither expressly nor tacitly revokes a prior one, both must be read together to fulfill the intent of the testator. *442 Succession of Stallings, 197 La. 449, 1 So.2d 690, 692-94 (1941); Reeves, 393 So.2d at 170-72; Succession of Tranchina, 144 So.2d 778, 781 (La.App. 4 Cir.1962); see Succession of Lee, 02-189, pp. 3-4 (La. App. 5 Cir. 10/29/02), 831 So.2d 477, 479.

ANALYSIS
The heirs' reliance on various cases ignores the factual differences in those cases and the case on appeal. For example, in Succession of Maguire, 228 La. 1096, 85 So.2d 4, 5 (1955), the testator directed that a charitable trust be established to help young girls, and then, in addition, stated that she "would like the trustees to give [my cousin] every month the rent of one of the tenant houses or the equivalent-The trustees to decide the amount." Thus, the court concluded that considering the testament as a whole, the use of the term "would like," as a request to a third party with discretion over the amount of the gift, does imply a hope or "precatory suggestion." Maguire, 85 So.2d at 6. In the instant case, there is no third party trust or trustees with such discretion placed between the testatrix and the dispositions. In Succession of Diaz, 617 So.2d 34, 35 (La.App. 4 Cir.1993), the testator stated that, "I further wish my sister (one and only) to give to Dot the sum of $45,000 for my father's house and a fair price, $10,000 for my truck should she desire to purchase this for my nephew." After noting that there is no rule that the word "wish" is always interpreted as precatory, the fourth circuit found that the provision at issue "merely expresses the desire of the decedent for his sister to give certain sums to" another. Diaz, 617 So.2d at 36. The Diaz court then found the testator's language to be "not dispositive, but merely precatory and without legal effect." Id. Again, the instant case does not concern a request to a third party with discretion to arrange a gift from the testator.
The determination of testamentary intent does rest solely on a testator's choice to use the words "would like" or "wish." There is no fixed rule that particular words should be interpreted as a "precatory suggestion," rather than "a mandate of the testator." Diaz, 617 So.2d at 36. The document must be read as a whole. Carter, 332 So.2d at 442; Reeves, 393 So.2d at 171. Courts themselves have employed a possibly precatory word, "wishes," to represent the testator's intent to dispose of his property in an acceptable manner. In Succession of Maquar, XXXX-XXXX, p. 9 (La.App. 4 Cir. 6/4/03), 849 So.2d 773, 778, writ denied, XXXX-XXXX (La.11/21/03), 860 So.2d 544, the appellate court examined the legislative changes to testamentary formalities when the testator is impaired. The court stated that "the legislature wanted to insure that if one adhered to the codal requirements, he or she could be assured, . . . that his testamentary wishes would be honored in accordance with the language contained in the testament." (Emphasis added.) In Succession of Boyter, 99-0761, p. 15 (La.1/7/00), 756 So.2d 1122, 1133, the supreme court noted that a change in the law, regarding a forced heir's right of reduction, allowed testators to evaluate whether their "wishes" would be "carried out upon their deaths or whether they need to execute new testaments." It follows that words such as "like" or "wishes" may be dispositive.
The 1994 document begins with the location of various assets, and then provides information on how the assets are to be disposed. Although the testatrix in this case did not use well known legal terms, such as "bequest" or "bequeath," the language of the document, when read as a whole, exemplifies more than mere hopes or an inventory of assets. Compare Hendry *443 v. Succession of Helms, 557 So.2d 427 (La.App. 3 Cir.), writ denied, 560 So.2d 8 (La.1990) (Unlike Hendry, the document in question in the case before us does not contain a listing of debts or bills, or testimony that the document was given to an attorney as a guide for the drafting of a subsequent will.). Ms. White may have used the term, "would like" for some of the dispositions, but on its face, by its own language, the intent of the document was to dispose of Ms. White's assets, if any were left after her illness. In one of the dispositions, she wrote, "I'd like each niece and nephew . . . to have a thousand dollars each  (15 in all)." She went on to state that: "The rest divided. Note: All this may have to go for Dr.  Hospitals  I pray not!" On the last page, she named two churches and wrote: "1,000 each out of savings (if there is any left!)."
Our final consideration on the validity of the 1994 document is a notation inscribed on the reverse side of the third page. Without dating or signing the reverse side, the deceased wrote the following note:
 Listing of assets-Temporary
 only-in case of emergency,
 Bank Box Hibernia
 No. 92
 Very little in box
Based on the note's language, the heirs argue that the notation clearly shows that the 1994 document was not meant to be a testamentary disposition of assets, and was only a listing of assets. The language, however, can be interpreted in many ways. If the note is read as two separate statements, the first could be a denomination of the three pages as only a temporary listing of assets, and the second could be read as a note to the family that very little was in a particular bank box. On the other hand, the notation may be read as one statement. Through the one statement, the deceased may have been directing her family to look for a "temporary" listing of assets in her bank box. Or, she may have been reminding herself to update her list of assets if her savings were substantially depleted by medical costs.
Certainly, the notation is not contained within the dated and signed pages, and is susceptible of more than one interpretation. Given multiple interpretations of writings, a court must opt for the one that grants testacy and turns away intestacy. Carter, 332 So.2d at 422; Reeves, 393 So.2d at 171; see LSA-C.C. 1612. Thus, based on these particular facts, we find no error in the trial court's refusal to accept the meaning the heirs attributed to the writing. See LSA-C.C. art. 1575 (court has discretion to consider or not the testator's notes written after the signature).
Therefore, after reviewing the language of the whole document, in light of the applicable codal provisions and the jurisprudential guidelines, we see no error in the trial court's finding that the deceased intended to dispose of her assets in the 1994 document. Having found testamentary intent, the trial court did not err in its recognition of the 1994 document as a valid last will and testament.
The 2002 document, whether meant to function as a continuation or a codicil, does not explicitly or implicitly revoke any of the provisions of the 1994 testament. It only adds a provision naming an executrix. From these facts, we cannot say that the trial court erred in finding that the two testaments, read together, best fulfilled the testatrix's intent. See Reeves, 393 So.2d at 171. Thus, the trial court did not err in denying the heirs' petition to annul the 2002 testament.[1]

*444 CONCLUSION
For these reasons, we affirm the judgments appealed. The costs of the appeal are assessed to the appellants, Suzanne White Davis, Mary Juliette White Chappo, John de Brousse White, Lauretta White Bordelon, Melissa White Trahern, Melinda White Greer, and Joy Noel White Moore.
AFFIRMED.

APPENDIX A

*445 APPENDIX B

*446 
*447 
NOTES
[1] In addition, we find no error in the trial court's denial of the heirs' motions for new trial. The record contains no support for the heirs' claim of relevant new evidence that could not have been discovered before the hearing. The heirs also complain that the judgment on appeal is invalid in its failure to reflect the agreements by opposing counsel to dismiss other pending matters before the court and the interlocutory rulings made by the court on the day of the hearing. Under the facts in the record before us, we find no such invalidity in the judgment on appeal, and we were not directed to any provision of law requiring all rulings and party agreements made on a given day to be included in one final judgment. For those matters requiring a written judgment before appeal, the heirs may still petition the trial court for a signed judgment.