McDONALD, J.
Concurring:
|,I respectfully concur with Judge Gui-dry’s opinion for the following reasons. I agree that Truitt proved that Mr. Aehee’s handwritten will is a valid olographic testament. As to its form, the olographic testament is valid, because it is entirely written, dated, and signed by Mr. Achee, and his signature appears at the end of the testament. Under the express provisions of LSA-C.C. art. 1575(A), an “olographic testament is subject to no other requirement as to form.” I disagree with Chief Judge Whipple and Judge McClendon to the extent they think additional ■ clauses are needed.
*12 Next, I agree that Mr. Aehee’s testamentary intent that the handwritten document dispose of his property upon his death is evident on the. face - of the document. Admittedly, the document is not artfully drafted. But, the testator’s intent controls the interpretation of his testament. LSA-C.C. art. 1611(A). A testament should be interpreted to give it effect, rather than to give it no effect. See LSA-C.C. art. 1612. The law is indulgent with documents'written without the aid of counsel and obeys the testator’s clear intention however informally conveyed. See In re Succession of White, 06-1002 (La. App. 1 Cir. 5/4/07), 961 So.2d 439, 441. Here, Mr. Achee references the estates of his parents in the first clause and, then, in the next sentence, indicates “I want‘to leave whatever is passed on to [me] to [T]ruitt Dain [M]iller[.]” Then, Mr. Achee writes three more sentences plainly showing his intent to give Truitt specific items. Although Mr. Achee’s testamentary intent is “informally conveyed,” LSA-C.C, art. 1611(A) makes it clear that his intent controls the interpretation of the document. If more than one interpretation presents itself, a document must be read to carry out the testator’s wishes, not defeat them; to support testacy, not intestacy. Succession of White, 961 So.2d at 2441. In this case, I think Truitt carried his burden of proving the olographic testament’s validity as to form as well as to Mr. Achee’s testamentary intent.
Even if the face of the handwritten document does not convince one of Mr. Achee’s testamentary intent to leave Truitt his separate property, L think Marie Miller’s testimony regarding her brother’s execution of both the handwritten and typed testaments certainly does.[1] Notably, we are not limited to the face of the handwritten document to determine testamentary intent, because Marie testified to such at the hearing to annul the probated testament, and, as Judge Guidry points out in a footnote, Gladys did not object to the trial court’s consideration of her testimony.
Maxie clearly testified that Mr. Achee handwrote his will in' her presence. She then explained that, after he handwrote the will, one of her coworkers came to visit, that Mr. Achee told the coworker about his will, the coworker offered to take the will to her office and “type it up for [him] and spiff it up ... and -make it look nice.” In response, Mr. Achee asked “do you think I really need to do that?” After further discussion, the coworker went and 'typed the will with wording clearly showing Mr. Achee’s testamentary intent to leave his “personal property” to Truitt, returned with the will, and Mr., Achee signed it. I think Marie’s testimony regarding these events establishes Mr. Achee’s testamentary intent that the handwritten document serve as his will. I do not think Mr. Achee’s later act, allowing the coworker to type a document to “spiff up” the handwritten document, negated his earlier intent that the handwritten document serve as his will. -
Thus, I think the trial court correctly found that the handwritten document, on its face, is a valid olographic will. And, if that is not enough, Marie’s testimony, admitted without Gladys’s objection, shows Mr. Achee’s testamentary intent. Because Mr. Achee’s intent controls the interpretation of his testament, and I think it is plainly clear he wanted Truitt to have his separate property upon his death, I agree with Judge Guidry that the trial court’s *13 judgment, denying Gladys’s motion to annul the probated testament, should be affirmed. I note, however, that the proper interpretation of the testament’s provisions will have to be determined by. the trial court.

. In this regard, I disagree with footnote two of Judge Guidry's opinion to the extent it states that Marie '-‘offered no.testimony regarding the execution of the handwritten document and limited her testimony to the circumstances surrounding the execution of the typewritten document.”